UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADRIAN A. PLESHA, <br><br> Plaintiff, <br><br> v. <br><br> BESTLINE INTERNATIONAL RESEARCH, INC., <br><br> Defendant. | Civil Action No. 19-1273 (BAH) <br><br> Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiff Adrian A. Plesha, a consultant, seeks a default judgment in a breach of contract suit against his former client, defendant Bestline International Research, Inc., based on his factual allegations that, in 2017, defendant abruptly terminated their 2015 contract, without paying all monies due to plaintiff, and then defendant filed for bankruptcy. Compl. ¶¶ 1, 5, 8, 20, 22, ECF No. 1; Pl.'s Mot. Default J. ("Pl.'s Mot.") at 3, ECF No. 27. Although a former executive of defendant has submitted letters to the Court on behalf of the defendant corporation at various points in this two-year long litigation, no attorney has yet filed an appearance on defendant's behalf, nor filed any response to the Complaint, despite this Court's admonition on two occasions that a corporation may not appear *pro se*. *See* Min. Order (July 3, 2019) (citing *Greater S.E. Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1, 4–5 (D.C. Cir. 2009)); Min. Order (July 19, 2019).

For the reasons detailed below, default judgment is granted as to Counts One and Two of the Complaint and denied as to Counts Three, Four, and Five.

1

I.      **BACKGROUND**

The relevant factual background and procedural history is summarized below, with plaintiff's factual allegations, as set out the Complaint, presumed to be true. *See Robinson v. Ergo Solutions, LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014) ("Upon entry of default by the clerk, the 'defaulting defendant is deemed to admit every well-pleaded allegation in the complaint.'") (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002))).

   A.      **Factual Background**

Plaintiff consults with new companies to develop opportunities for business development. Compl. ¶ 5. On about September 10, 2015, plaintiff entered into a contract with defendant, a corporation that develops oil and gas treatment technologies for use in the public and private sectors. *Id*. ¶¶ 7–8. [1] Under the terms of the agreement, plaintiff was obliged to advocate for and introduce defendant to industry actors and government decision-makers. *See* Pl.'s Decl., Ex. A, Agreement for Professional Services ("Agreement") § 7, ECF No. 27-2. In return for plaintiff's consulting services, defendant agreed to compensate plaintiff in three ways: (1) defendant would pay plaintiff a total of $120,000, payable over twelve months in monthly installments of $6,000 in cash and $4,000 in supplementary equitable shares of defendant, Compl. ¶ 11 (citing Agreement § 2(a)); (2) defendant would pay plaintiff a "finder's fee" of 10% of defendant's stock or 10% of the net sale of the entire company if plaintiff "either brings in or introduces the company to a team of investors who acquire it or for finding a corporate shell in which the company would transfer its assets," *id.* ¶¶ 10, 14 (citing Agreement § 2(c)); and (3) defendant would pay plaintiff "a commission of 7% of the company's gross sales on all non-

---

[1]      At the time the contract was formed, Bestline was known as Bestline Lubricants, Inc. *See* Compl. ¶ 1; Pl.'s Decl., Ex. A at 1.

federal government business," *id.* ¶ 15 (citing Agreement § 2(d)). [2]  This contract was effective for one year, from September 1, 2015 through August 31, 2016, with provision for an automatic extension for an additional twelve month period, unless defendant notified plaintiff of its intention to terminate the agreement "in writing before July 31, 2016." Agreement §§ 4, 4.a.

Plaintiff introduced defendant to new clients including Chevron, Valvoline, UPS, AT&T, and Lowes. Compl. ¶ 18. On August 30, 2017, defendant terminated the Agreement in an email sent to plaintiff by John Polster, *id.* ¶ 22, whose position within the defendant corporation is not identified in the email but who has identified himself in correspondence to this Court as defendant's "Exec. Vice President." *See, e.g.,* Def.'s First Mot. Extension, ECF No. 12. [3] Polster's email stated that defendant did not "have the resources to continue." Pl.'s Decl., Ex. B, August 30, 2017, E-Mail from John Polster to plaintiff, at 16, ECF No. 27-2; Compl. ¶ 22. Before the termination, defendant made some payments to plaintiff, but failed to make all payments for the cash, equitable shares, and company shares set out in the Agreement. Compl. ¶ 20. As a result, plaintiff alleges losses in the amount of approximately $284,425. *See* Pl.'s Mot. at 6. Specifically, plaintiff claims that he is owed $87,625 in deferred monthly payments as well as approximately $96,000 in company equity, and/or shares of that value. *See id.* at 5–6 (citing Agreement § 2(a)). In addition, plaintiff estimates defendant owes $100,800 in cash from commissions on gross sales. *Id.* at 6; *see also* Compl. ¶ 16 (citing Agreement § 2(d)).

---

[2]   Defendant also agreed to pay certain expenses in connection with the Agreement, including reimbursing plaintiff for all transportation, hotel, meals, and other business-related expenses incurred in connection with carrying out plaintiff's services to defendant. Compl. ¶ 17 (citing Agreement §3).

[3]   On September 20, 2019, defendant's Board of Directors approved a resolution authorizing Polster, the "Secretary of BestLine International Research, Inc." to "appear in all such bankruptcy proceedings on behalf of the [c]ompany, and to otherwise do and perform any and all acts and deeds and to execute and deliver all necessary documents on behalf of the [c]ompany in connection with said bankruptcy proceedings." Corp. Resolution, *In re BestLine International Research, Inc.*, No. 19-11853-1 (Bankr. N.D.N.Y. Oct. 11, 2019), ECF No. 2.

Following the Agreement's termination, plaintiff made numerous attempts to recover the payments. Compl. ¶¶ 23–31. Defendant remained largely unresponsive for several months until November 16, 2017, when Polster advised plaintiff, via email, that the defendant owed him no commission but only $78,875 in monthly fees. *See id.* ¶ 33. Polster offered to ask the Board to issue plaintiff $78,875 of company stock, amounting to a 0.5% interest in defendant, *id.*, but plaintiff rejected this offer, *see* Pl.'s Decl. ¶ 15, ECF No. 27-2. After subsequent negotiations failed, plaintiff initiated this action to recover unpaid amounts owed under the terms of the Agreement. *See* Compl. ¶¶ 34–38.

### B.  Procedural Background

Plaintiff filed his Complaint on May 1, 2019, asserting five claims against defendant: (1) breach of contract, *id.* ¶¶ 40–46; (2) breach of implied covenant of good faith and fair dealing, *id.* ¶¶ 48–52; (3) quantum meruit, *id.* ¶¶ 54–59; (4) misrepresentation, *id.* ¶¶ 61–68; and (5) promissory estoppel, *id.* ¶¶ 70–73.

Defendant was served on July 25, 2019. Return of Serv. Aff. at 2, ECF No. 11. Even before then, on June 28, 2019, Polster, acting *pro se*, attempted to file an answer on defendant's behalf, but the Court denied leave to file because defendant, as a corporation, is not permitted to appear *pro se*. Min. Order (July 3, 2019). On August 15, 2019, the date by which defendant was required to have filed an answer, Polster submitted another letter to the Court requesting until September 27, 2019 to file defendant's answer, which letter was docketed and "[c]onstrued as motion for extension of time to respond to the complaint." *See* Def.'s First Mot. Extension. Based on Polster's representation that defendant had obtained an attorney to file a petition in bankruptcy and needed time to retain representation in these proceedings, defendant was granted an extension until September 27, 2019 to respond to the Complaint. Min. Order (Aug. 22, 2019). No timely response was filed by defendant, however.

4

On October 7, 2019, the Court directed plaintiff to show cause why the case should not be dismissed for failure to prosecute. *See* Min. Order (Oct. 7, 2019) (citing D.D.C. LCvR 83.23). Polster, acting *pro se*, requested another extension on defendant's behalf, Def.'s Second Mot. Extension, ECF No. 14, which request was docketed and granted, requiring defendant's response to the Complaint to be filed by October 11, 2019, Min. Order (Oct. 9, 2019), but again no timely response was filed.

Plaintiff then sought entry of default, *see* Pl.'s Aff. Supp. Entry of Default, ECF No. 15, which the Clerk of Court entered against defendant on October 22, 2019, *see* Clerk's Entry of Default, ECF No. 16. Plaintiff subsequently explained that defendant had filed for Chapter 7 bankruptcy, *see* Pl.'s Response to Order to Show Cause ("Pl.'s Response") ¶ 10, ECF No. 17, and plaintiff was asserting his rights to collection in defendant's bankruptcy case, *see id.* ¶ 13. Plaintiff was directed to file quarterly status reports, apprising the Court of the status of defendant's bankruptcy proceedings and whether plaintiff would be able to prosecute this case to judgment. Min. Order (Nov. 26, 2019).

Plaintiff submitted six timely status reports every 90 days over a period of eighteen months and, in the last status report, advised that "[t]he Bankruptcy Court issued a Final Decree deeming the Chapter 7 bankruptcy claim of the defendant 'fully administered' on January 8, 2020," but that "proceedings in this Court are not complete, and plaintiff maintains that [he] will be able to prosecute this case to judgment." Pl.'s Status Report (May 24, 2021) at 2–3, ECF No. 24. [4] Plaintiff thereafter filed the pending motion for default judgment, Pl.'s Mot. Defendant

---

[4] The filing of the bankruptcy petition triggered an "automatic stay against most collection activities" and, "while the stay is in effect, creditors [could not] sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor." Pl.'s Response ¶ 10 (quoting Notice of Ch. 7 Bankr. Case, *In re BestLine International Research, Inc.*, No. 19-11853 (Bankr. N.D.N.Y. Oct. 11, 2019), ECF No. 3); *see also* 11 U.S.C. § 362(a). On January 8, 2020, the bankruptcy court issued a final decree that defendant's estate had been fully administered and the bankruptcy case closed, s*ee* Final Decree, *In re BestLine International Research, Inc.*, No. 19-11853 (Bankr. N.D.N.Y. Jan. 8, 2020), ECF No. 6, extinguishing the stay, *see* 11 U.S.C. § 362(c). Plaintiff is now free to pursue

5

has filed no response to this motion or in response to this Court's order to show cause why plaintiff's motion should not be granted, *see* Min. Order (June 24, 2021).[5]

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure "provide for default judgments . . . [to] safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party,'" and to protect "'the diligent party . . . lest he be faced with interminable delay and continued uncertainty as to his rights.'" *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a); *see* 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2682 (4th ed. 2018) ("When the prerequisites of Rule 55(a) are satisfied, an entry of default may be made by the clerk without any action being taken by the court . . . [as long as] the clerk [has] examine[d] the affidavits filed and [found] that they meet the requirements of Rule 55(a)."). Upon entry of default, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund*, 239 F. Supp. 2d at 30 (citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971)).

Federal Rule of Civil Procedure 55(b)(2) permits a court to consider entering a default judgment when a party applies for that relief. *See* FED. R. CIV. P. 55(b)(2). "The determination of whether default judgment is appropriate [under Rule 55(b)(2)] is committed to the discretion

---

his claims against defendant, since corporate debtors, unlike individual debtors, are ineligible for discharge of all their debts at the termination of the bankruptcy suit. *See* 11 U.S.C. §§ 524(a), 727.

[5] On September 10, 2021, Polster again submitted a *pro se* letter on defendant's behalf but leave to file was denied. *See* ECF No. 28.

6

of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson*, 636 F.2d at 836).  Default judgment is appropriate if defendants are "'totally unresponsive'" and the failure to respond is "plainly willful, as reflected by [the party's] failure to respond 'either to the summons and complaint, the entry of default, or the motion for default judgment.'"  *District of Columbia v. Butler*, 713 F. Supp. 2d 61, 64 (D.D.C. 2010) (quoting *Gutierrez v. Berg Contracting Inc.*, No. 99–3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000)).  When there is an "absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied."  *Int'l Painters*, 531 F. Supp. 2d at 57 (internal quotations omitted).

"Entry of a default judgment is not automatic," *Mwani*, 417 F.3d at 6, however, and so the procedural posture of a default does not relieve a federal court of its "'independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'"  *Olson v. United States*, 953 F. Supp. 2d 223, 228 (D.D.C. 2013) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).  Additionally, "a court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant."  *Mwani*, 417 F.3d at 6.

When entering default judgment, the court must "'make an independent determination of the sum [of damages, if any,] to be awarded,'" *Sanchez v. Devashish Hosp., LLC*, 322 F.R.D. 32, 37 (D.D.C. 2017) (quoting *Boland v. Yoccabel Constr. Co.*, 293 F.R.D. 13, 17 (D.D.C. 2013)). "To ensure that there is an adequate basis to determine damages," a plaintiff bears the burden of "'prov[ing] his entitlement' to the relief requested," *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (quoting *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 36

7

(D.D.C. 2014)), "to a reasonable certainty," *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 68 (D.D.C. 2011) (citing *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009)).

## III.   DISCUSSION

A default judgment for damages may be entered, after both subject-matter jurisdiction and personal jurisdiction over a defendant is established, when the plaintiff has presented satisfactory evidence to establish his claims against the defendant and entitlement to the monetary damages sought. [6] Plaintiff has met these requirements—and is entitled to a damages award—on his two contractual claims but not for his remaining equitable claims, as discussed *seriatim* below.

### A.   COUNT I – BREACH OF CONTRACT

Plaintiff has provided sufficient evidence to show defendant is liable for breach of contract. To state a claim for breach of contract under District of Columbia law, "'a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach.'" *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)); *see also Wetzel v. Capital City Real Estate, LLC*, 73 A.3d 1000, 1005 (D.C. 2013) (same); *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 30 (D.D.C. 2015) (same, applying District of Columbia law).

---

[6]   This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because plaintiff is a citizen of the District of Columbia, Compl. ¶ 3, and defendant is a citizen of New York, *id*. ¶ 6, and the matter in controversy exceeds the jurisdictional threshold of $75,000. Personal jurisdiction may be exercised over defendant because the contract at issue provided that "any litigation arising from this Agreement shall be in Washington D.C . . . ." *See* Agreement § 8. Such clauses are presumptively valid provisions, *Marra v. Papandreou*, 216 F.3d 1119, 1124 (D.C. Cir. 2000) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)), and reflect defendant's implied consent to the personal jurisdiction of this Court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (enforcement of forum-selection provisions does not offend due process if provision is just, reasonable, and obtained through freely negotiated agreement).

As support for the Complaint's allegations, which are assumed to be true, plaintiff has submitted a copy of the parties' Agreement, which is signed by Florian A. Rais, defendant's Chief Executive Officer ("CEO"). *See* Agreement at 3; Compl. ¶ 9. The Agreement plainly provides three forms of compensation to plaintiff for services rendered, including a monthly payment for the duration of the contract. Agreement at § 2(a). Defendant made some of its monthly payments but, with plaintiff's approval, began deferring them. Compl. ¶¶ 12, 20. Defendant has still not fully rendered its monthly payments owed to plaintiff.

The contract further required defendant to pay plaintiff a "[c]ommission of 7% (seven percent) of Company gross sales on all non-federal government business." Agreement at § 2(d). Plaintiff does not explicitly state but, based on his request for relief, implies that defendant never paid any commission fee. *See* Compl. ¶ 16. Polster's November 16, 2017 e-mail to plaintiff stated that defendant owed no commission payments because plaintiff did not request commissions earlier nor any sales information from which commissions could be calculated. *See* Pl.'s Decl., Ex. B at 10. Yet, any tardiness by plaintiff in demanding commissions owed does not nullify the provision in the agreement that prescribes this fee. The contract required defendant to pay plaintiff 7% commission on all non-federal government business and it did not. Consequently, plaintiff has not been fully compensated for the consulting work he performed pursuant to the Agreement. Compl. ¶ 45. Plaintiff claims he suffered losses in the amount of approximately $284,425, *see* Pl.'s Mot. at 6, and has satisfied his burden. Defendant is therefore liable for breach of contract.

    B.    **COUNT II - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Under District of Columbia common law, "[e]very contract contains an implied covenant of good faith and fair dealing," *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015),

which prohibits "'do[ing] anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . .'" *Abdelrhman v. Ackerman*, 76 A.3d 883, 891 (D.C. 2013) (quoting *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988)). "'To state a claim for breach of [this covenant], a plaintiff must allege either bad faith or conduct that is arbitrary and capricious.'" *Id.* at 891–92 (quoting *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013)). Bad faith amounts to "more than mere negligence," but includes conduct reflecting a "lack of diligence, purposeful failure to perform, and interference with the other party's ability to perform." *Wright*, 60 A.3d at 754.

Plaintiff has provided sufficient evidence to show defendant is liable for breaching this covenant. On August 30, 2017, Polster emailed plaintiff terminating the parties' contract, stating, "we have no choice but to cancel our contract," but expressly offered to continue the relationship through a different compensation arrangement based entirely on commission. Pl.'s Decl., Ex. B at 16. On November 16, 2017, Polster had an about-face and emailed plaintiff stating that, upon further review, "it is now apparent that there is no contract." *Id* at 10. Polster provided two justifications for this about-face: (1) the contract executed by plaintiff was with "BestLine Lubricants, Inc.," whereas the company's name is "BestLine International Research, Inc.;" and (2) the contract was never presented to defendant's Board for approval. *Id*. These justifications for asserting no contract existed appear to be spurious: on September 9, 2017, defendant's CEO Florian Rais wrote to plaintiff from the email address "frais@bestlinelubricants.com," *id.* at 14, suggesting the company held itself out as "BestLine Lubricants" in at least some business contexts. Furthermore, the contract with plaintiff contained no provision stating that defendant's Board needed to approve the agreement before the contract

would take effect. *See* Agreement. Polster's justifications for denying the existence of the contract, therefore, represent arbitrary and capricious conduct on the part of defendant.

Defendant's decision to make partial payments of the sum owed to plaintiff under the contract and to terminate the Agreement before its renewal date confirms that defendant viewed the contract to be valid and binding. Defendant raised an issue about the validity of the Agreement only when called upon to fulfill its obligations on the agreed-upon terms. For these reasons, defendant "willfully rendered [an] imperfect performance," and therefore defendant is liable for breach of the covenant of good faith. *See Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 54 (D.D.C. 2012).

### C.     COUNTS III AND V - QUANTUM MERUIT AND PROMISSORY ESTOPPEL

Given plaintiff's success on Counts I and II, his claims on Counts III and V for quantum meruit and promissory estoppel, respectively, are alternative means to obtain relief on equitable legal theories and precluded. To bring a claim of quantum meruit, plaintiff must establish that: (1) plaintiff rendered "'valuable services;' (2) 'for the person from whom recovery is sought;' (3) 'which services were accepted and enjoyed by that person;' and (4) 'under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid.'" *Alemayehu v. Abere*, 199 F. Supp. 3d 74, 84 (D.D.C. 2016) (quoting *Providence Hosp. v. Dorsey*, 634 A.2d 1216, 1218 n.8 (D.C. 1993)). Quantum meruit is a theory of recovery that "rests on a contract implied in fact, that is, a contract inferred from the conduct of the parties[.]" *Id*. at 84 n.5 (internal quotations omitted). The existence of an actual contract precludes a claim for quantum meruit because "there is no need to consider whether the parties' conduct implies a contractual relationship." *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010); *U.S. ex rel. Am. Civ. Constr., LLC v. Hirani Eng'g & Land Surveying, P.C.*, 962 F.3d 587, 595 (D.C.

Cir. 2020) (restitution, rather than quantum meruit, is the proper remedy where defendant has breached an express contract).

Similarly, promissory estoppel is an equitable remedy available where the formal requirements of a contract have not been satisfied. *Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 279 (D.C. Cir. 2009). A claim for promissory estoppel requires plaintiff to show there was a promise that he reasonably relied upon to his detriment. *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 97 (D.D.C. 2003) (citing *Simard v. Resolution Trust Corp.*, 639 A.2d 540, 552 (D.C. 1994)). "District of Columbia law is clear that promissory estoppel applies to arrangements only where no written agreements exist." *Parnigoni v. St. Columba's Nursery School*, 681 F. Supp. 2d 1, 26 (D.D.C. 2010) (citing *Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 147 (D.D.C. 2007)).

Plaintiff's claims of promissory estoppel and for quantum meruit fail because there is an express, written contract between the parties. *See Vila*, 570 F.3d at 280; *United States ex rel. Am. Civ. Constr., LLC*, 962 F.3d at 595 (quantum meruit improper remedy where express contract exists); *Plesha*, 725 F. Supp. 2d at 111–112 (existence of contract precluded claims for promissory estoppel and quantum meruit). As described above, plaintiff's claims are predicated on the breach of an express written contract, and plaintiff does not identify any promises independent of the express contract for which promissory estoppel or quantum meruit could apply. *See Ace Am. Ins. Co. v. Fed. Crop Ins. Corp.*, 209 F. Supp. 3d 343, 347 (D.D.C. 2016) (additional promises outside contract not precluded).

### D. COUNT IV – FRAUDULENT MISREPRESENTATION

Plaintiff's allegations of fraud are inseparable from his breach of contract allegations and merely reiterate defendant's failure to compensate fully plaintiff under the terms of the contract. *See* Compl. ¶¶ 61-66. This is fatal to his fraudulent misrepresentation claim.

Plaintiffs bringing fraud-related claims in the D.C. Circuit must state "the time, place[,] and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as consequence of the fraud," as well as "the individuals allegedly involved in the fraud." *U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotations omitted). [7] Although "'conduct occurring during the course of a contract dispute may be the subject of a fraudulent or negligent misrepresentation claim,'" the facts supporting that claim must be "'separable from the terms of the contract.'" *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 418 (D.C. Cir. 2014) (quoting *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008)); *see also Plesha*, 725 F. Supp. 2d at 113 ("District of Columbia law requires that the factual basis for a fraud claim be separate from any breach of contract claim that may be asserted."); *Choharis*, 961 A.2d at 1089 ("[T]he tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship."). In other words, "[t]he tort must stand as a tort even if the contractual relationship did not exist," such that "an action for breach of contract would reach none of the damages suffered by the tort." *Id.*; *see Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 199-20 (D.D.C. 2016) (dismissing fraud claims where the plaintiffs alleged fraudulent statements "duplicative of their breach of contract claim" because the statements in question "directly involve[d] the terms and conditions" of the disputed contract).

---

[7] The elements for a fraudulent misrepresentation claim require a plaintiff to prove: "(1) a false representation; (2) in reference to a material fact; (3) made with knowledge of its falsity; (4) with the intent to deceive; and (5) action taken in reliance upon the representation." *Frese v. City Segway Tours of Washington, DC, LLC*, 249 F. Supp. 3d 230, 236 (D.D.C. 2017) (citing *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013)).

Here, defendant's failure to comply with the contractual obligations due to plaintiff under the Agreement constitutes a breach of contract, not fraud. Statements by defendant regarding meeting or modifying those obligations are necessarily related to its obligations and performance pursuant to the contract. Moreover, the only injury plaintiff points to is "the mere disappointment of [his] hope to receive his contracted-for benefit," *Choharis*, 961 A.2d at 1089, which is insufficient to maintain a separate fraud claim. Plaintiff's fraud claim does not stand independent from his contract claims and therefore fails.

### E. PLAINTIFF'S ENTITLEMENT TO DAMAGES

In the default judgment context, the court must make an independent determination of any damages to be awarded, relying on affidavits, documentation, or an evidentiary hearing. *See Fanning v. Seneca One Realty LLC*, 265 F. Supp. 3d 31, 34 (D.D.C. 2017). Thus, a plaintiff suing for breach of contract must provide some reasonable basis upon which damages may be estimated but is not required to prove damages "'with mathematical certainty[.]'" *Klayman v. Judicial Watch, Inc.*, 255 F. Supp. 3d 161, 167 (D.D.C. 2017) (quoting *Garcia v. Llerena*, 559 A.2d 1138, 1142 (D.C. 1991)). Any failure to offer a reasonable basis for calculating damages means, then, that the plaintiff fails to meet the requisite burden of proof to recover damages for breach of contract. *Id.* (citing *Windows Specialists, Inc. v. Forney Enter., Inc.*, 106 F. Supp. 3d 64, 92 (D.D.C. 2015) (citing *Cahn v. Antioch Univ.*, 482 A.2d 120, 120 (D.C. 1984)).

Here, plaintiff points to Agreement § 2(a), which provided two forms of monthly payments to plaintiff, totaling $120,000 annually. The first monthly payment was a fixed amount of $6,000. *See* Agreement § 2(a). Plaintiff claims that defendant never fully rendered payment and that he is still owed $87,625 in deferred monthly payments under § 2(a). *See* Pl.'s Decl. ¶ 8. The second was a monthly payment of $4,000 in supplementary company equitable shares. Agreement § 2(a). Plaintiff claims that he never received any of this amount over the

14

two years the contract was in place, entitling him to $96,000.  Pl.'s Decl. ¶ 9.  The contract between the parties is clear and plaintiff's undisputed sworn declaration provides substantial proof of this claim.  Therefore, plaintiff is entitled to damages in the amount of $183,625.

Plaintiff further claims he is entitled, pursuant to § 2(d) of the Agreement, to the equivalent of 7% of defendant's gross sales on all non-federal government business, which amounts to an estimated $100,800.  Compl. ¶¶ 15, 16.  At the same time, he acknowledges this amount is merely an estimate because "without access to Bestline's company earnings it is impossible to calculate the exact amount owed under § 2(d)." *Id*. ¶ 16.  Plaintiff's estimate of $100,800 is based on an e-mail exchange plaintiff had with Polster, defendant's CEO Florian Rais, and a third individual following the termination of the Agreement.  In the exchange, plaintiff estimates defendant's gross sales to be $60,000 per month, *see* Pl.'s Decl., Ex. B at 15, but Polster offers no response to this estimate.  Plaintiff interprets this silence as acquiescence, Pl.'s Decl. ¶ 11, and that this estimate is reasonable because Polster, in response, states that he *believed* defendant's last regular sale of stock "was based upon a $15[ million] valuation," Pl.'s Decl., Ex. B at 10.  Plaintiff offers no additional evidence to support his estimate of defendant's gross monthly sales or Polster's stated belief.

While D.C. courts recognize that a plaintiff need not prove damages "'with mathematical certainty,' he must proffer 'some reasonable basis on which to estimate damages.'"  *See SNH Med. Office Props. Tr. v. Healthy Eateries L.L.C.*, 325 F.R.D. 514, 519 (D.D.C. 2018) (quoting *Garcia*, 559 A.2d at 1142).  An agent's *belief* as to the valuation of the company is not sufficient proof that plaintiff reasonably estimated the monthly gross sales of the company.  Plaintiff is not entitled to compensation under § 2(d) because the accuracy of this estimate cannot be verified with reasonable certainty.  *See Int'l Painters & Allied Trades Indus. Pension Fund v. Exec*

*Painting, Inc.*, 719 F. Supp. 2d 45, 51 (D.D.C. 2010); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (remanding case to the district court to calculate damages based on appropriate evidence because the district court had erroneously accepted the plaintiff's estimate of damages at face value); *Gillespie v. Capitol Reprographics, LLC*, 573 F. Supp. 2d 80, 87 (D.D.C. 2008) (finding grant of default judgment was improper because the court needed additional information to ascertain the plaintiff's claim for monetary damages).

On plaintiff's damages award, for which he has sustained his proof burden in the amount of $183,625, plaintiff seeks both pre-judgment and post-judgment interest, as well as attorney's fees and costs. The award of pre-judgment interest "rests within this Court's discretion, subject to equitable considerations." *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 58 (D.D.C. 2012). D.C. Code § 15-108 requires pre-judgment interest "if (1) the action is one to recover a liquidated debt, and (2) the interest is payable on that debt by contract or by law or usage." *Steuart Inv. Co. v. Meyer Group, Ltd.*, 61 A.3d 1227, 1239 (D.C. 2013).[8] "For liquidated debts, § 15-108 mandates 'pre-judgment interest from the date the debt is due until the date it is paid.'" *Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Hotel Co.*, 342 F. Supp. 3d 1, 22 (D.D.C. 2018) (quoting *District of Columbia v. Pierce Assocs., Inc.*, 527 A.2d 306, 310 (D.C. 1987)). Where the contract does not specify the rate of interest, pre-judgment interest is limited to 6%. *Id.* at 21–22; D.C. Code §28-3302. "'Debt' as used in section 15-108 'is given a broad reading, and describes an amount of money the use of which a prevailing plaintiff has been deprived by the

---

[8] D.C. Code § 15-108 provides, in full, that: "In an action in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid."

defendant's conduct.'" *Bazarian Int'l Fin. Assocs., LLC*, 342 F. Supp. 3d at 22 (quoting *Wash. Inv. Ptnrs. of Delaware v. Secs. House, K.S.C.C.*, 28 A.3d 566, 581 (D.C. 2011)).

Plaintiff is entitled to pre-judgment interest under D.C. Code § 15-108 for defendant's debt under § 2(a) of the Agreement. Pre-judgment interest began accruing on August 31, 2017, after defendant terminated the contract. With total damages of $183,625 and interest accruing annually at 6%, plaintiff appears to be entitled to $46,425 in pre-judgment interest.

Any post-judgment interest is governed by the federal post-judgment interest statute, which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" and that such interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). The statute further provides that "[i]nterest shall be computed daily to the date of payment . . . and shall be compounded annually." *Id.* § 1961(b). As the use of the word "shall" suggests, an award of post-judgment interest under this statute is "mandatory, not discretionary." *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 165 (D.D.C. 2013); *Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 850 F. Supp. 2d 277, 287 (D.D.C. 2012). Plaintiff is therefore awarded post-judgment interest at the statutory rate.

Finally, plaintiff seeks reimbursement for attorneys' fees and costs. Absent a statute to the contrary, both D.C. and federal courts generally incorporate the "American Rule," under which "the prevailing party may not recover attorneys' fees as costs or otherwise." *Ellipso, Inc. v. Mann*, 594 F. Supp, 2d 40, 43 (D.D.C. 2009) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975)). Plaintiff correctly notes the existence of exceptions to this

general rule but fails to explain which exception might apply to his request, citing only a case addressing punitive damages, rather than attorney's fees and costs. Pl.'s Mot. at 12–13 (quoting *Brown v. Coates*, 253 F.2d 36, 39 (D.C. Cir. 1958) ("[I]n certain, narrowly defined circumstances, where a breach of contract merges with, and assumes the character of, a willful tort, calculated rather than inadvertent, flagrant, and in disregard of obligations of trust *punitive damages* may be assessed." (emphasis added))). Plaintiff has failed to identify any exception to the American Rule that would entitle him to attorneys' fees and costs, therefore, none shall be awarded.

## IV.   CONCLUSION

For the reasons set forth above, plaintiff's motion for default judgment is granted in part and denied in part. Specifically, plaintiff is entitled to judgment on his breach of contract and breach of implied covenant of good faith and fair dealing claims, in Counts I and II, but not on his quantum meruit, fraudulent misrepresentation, and promissory estoppel claims, in Counts III, IV and V. Plaintiff is awarded money damages in the total of:

- $183,625 in damages stemming from defendant's breach of the 2015 Agreement;
- $46,425 in pre-judgment interest; and
- Post-judgment interest to be awarded at the statutory rate.

Therefore, the total damages award is $230,050.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  November 16, 2021

_____
BERYL A. HOWELL
Chief Judge